# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| JASON R., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:23-CV-00171-BW |
| | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jason R. ("Plaintiff") brings this action pursuant to the Social

Security Act (the "Act"), seeking review of the final decision of the Commissioner of

Social Security (the "Commissioner"), that denied his application for Disability

Insurance Benefits ("DIB") under Title II of the Act, and his application for

Supplemental Security Income ("SSI") under Title XVI of the Act.  (*See* Dkt. No. 1.)

The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and

the parties consented to proceed before the undersigned in accordance with 28

U.S.C. § 636(b) and Special Order Nos. 3-350 and 3-354.  (*See* Dkt. No. 6.)

Plaintiff filed a motion for judgment on the pleadings pursuant to Federal Rule

of Civil Procedure 12(c), (Dkt. No. 14), along with a supporting brief, (Dkt. No. 15

("Pltf. Br.")), to which the Commissioner filed a response, (Dkt. No. 19 ("Def.

Resp.")).  For the reasons set forth below, Plaintiff's motion for judgment on the

pleadings, (Dkt. No. 14), is **DENIED**, and the Commissioner's decision is

**AFFIRMED**.

## BACKGROUND

On February 18, 2020, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning January 1, 2016.  (*See* Transcript ("Tr.") 14, 254-57, 258-65.)  In both applications, Plaintiff alleges disability due to a variety of mental and physical impairments, including (among others) "PTSD, severe nerve damage, degenerative disc disease, and fibromyalgia."  (*See* Tr. 289.)  The claims were denied initially on January 7, 2021, (Tr. 166), and again upon reconsideration on June 16, 2021, (Tr. 187), after which Plaintiff timely requested an administrative hearing, (Tr. 197).

On May 12, 2022, Administrative Law Judge Sherry L. Schallner ("the ALJ") held a telephonic hearing,[1] at which Plaintiff appeared and testified.  (Tr. 14.)  Plaintiff was represented at the hearing by Elvira Williamson, a non-attorney representative.  *Id.*  Charles D. Turner, an impartial vocational expert, also appeared and testified at the hearing.  *Id.*  The ALJ issued an unfavorable decision on December 16, 2022, finding Plaintiff not disabled.  (Tr. 11-26.)  On February 16, 2023, the Appeals Council denied Plaintiff's request for further review.  (Tr. 1-6.)  The ALJ's December 16, 2022 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") Pandemic, all participants attended the hearing by telephone.  (Tr. 14.)

## LEGAL STANDARDS

### I.    District Court Review

Judicial review of the Commissioner's denial of benefits is limited to whether
the Commissioner's position is supported by substantial evidence and whether the
Commissioner applied the proper legal standards in evaluating the evidence. *See* 42
U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*,
67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla.
It means such relevant evidence as a reasonable mind might accept as adequate to
support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*
*Copeland*, 771 F.3d at 923. To determine whether substantial evidence of disability
exists, four elements of proof must be weighted: (1) objective medical facts; (2)
diagnoses and opinions of treating and examining physicians; (3) claimant's
subjective evidence of pain and disability; and (4) claimant's age, education, and
work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe*
*v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)).

The Commissioner, rather than the courts, must resolve conflicts in the
evidence, including weighing conflicting testimony and determining witnesses'
credibility, and the Court does not try the issues de novo. *See Martinez v. Chater*, 64
F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).
Thus, the court may not reweigh the evidence or substitute its judgment for the
Commissioner's but must scrutinize the entire record to ascertain whether substantial
evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v.*

3

*Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, No. 13-CV-3014-P, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, No. 4:12-CV-244-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)). "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Wilder*, 2014 WL 2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Id*. (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

## II.    The Sequential Evaluation Process

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Copeland*. 771 F.3d at 923 (citing 42 U.S.C. § 423(d)(1)(A)). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued

period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Wren*, 925 F.2d at 125 (summarizing 20 C.F.R. § 404.1520(b)-(f)). On the first four steps of the analysis, the claimant has the initial burden of proving that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). The burden shifts to the Secretary on the fifth step to show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Id.* "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir.1987).

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If the claimant is not engaged in substantial gainful work activity, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If an individual's impairment precludes him or her from performing past work, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

## ALJ's FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her December 16, 2022 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since January 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, diabetes mellitus, peripheral neuropathy, obesity, fibromyalgia, arthritis, PTSD, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[2] except he can stand and walk 2 hours in an 8-hour day; can occasionally balance, stoop, kneel, crouch, crawl and [climb] stairs and ramps; can never climb ladders, ropes or scaffolds; must avoid unprotected heights and unprotected moving mechanical parts; can occasionally reach overhead bilaterally, but can frequently reach in other directions; can understand, remember and carry out simple and detailed instructions; can focus and concentrate on such tasks for 2 hour periods and persist at this 8 hours per day, 40 hours per week with normal breaks; can interact occasionally with supervisors, co-workers and the public; and can adapt to normal changes in work situations.  The claimant requires a cane to ambulate.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 6, 1978 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.  If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-26.)

Accordingly, the ALJ determined that, for the application for a period of disability and disability insurance benefits, protectively filed on February 18, 2020, the claimant is not disabled under sections 216(i) and 223(d) of the Act.  (Tr. 26.) The ALJ also determined that, for the application for supplemental security income filed on February 18, 2020, the claimant is not disabled under section 1614(a)(3)(A) of the Act.  *Id.*

## ANALYSIS

Plaintiff asserts two points of error.  Plaintiff first argues that the ALJ erred in finding at step two that Plaintiff's fibromyalgia was not a medically determinable impairment.  (*See* Pltf. Br. at 10, 13-16.)  Plaintiff asserts that the ALJ "made conflicting findings" because she listed fibromyalgia as a severe impairment, but in the related narrative, found fibromyalgia was not a medically determinable

8

impairment. (*See id*. at 13 (citing Tr. 13).) Plaintiff attributes this inconsistency to "a scrivener's error." (*See id*.) Plaintiff next argues that the ALJ erred in her evaluation of the opinion evidence because her findings regarding the persuasiveness of the opinion evidence was not supported by substantial evidence. (*See id*. at 10, 16- 20.)

The Commissioner argues in response that, even though the ALJ stated that fibromyalgia was a severe impairment, she clearly explained that the medical evidence did not establish that Plaintiff's alleged fibromyalgia was a medically determinable impairment. (*See* Def. Resp. at 4-10.) Regarding Plaintiff's second point, the Commissioner argues that the ALJ performed the proper persuasiveness analysis and reasonably assessed "slightly greater restrictions" based on the medical record as a whole. *Id*. at 10-18. Accordingly, argues the Commissioner, the ALJ's RFC finding was supported by substantial evidence. *See id*. at 10-18.

## I.    Relevant Medical Evidence

Plaintiff reported and testified that he could no longer work due to PTSD, nerve damage, degenerative disc disease, diabetes, chronic pain, and imbalance. (Tr. 17, 285, 309-16, 370-77.) He reported difficulties lifting more than 10 pounds, performing postural movements, walking more than 10 minutes, sitting between 10 and 30 minutes, completing tasks, remembering things, concentrating, understanding, using his hands, and poorly handling stress. (Tr. 342.) He also reported using a cane. (Tr. 343.) Plaintiff testified that he was currently working several hours per day, four days per week, as a home health aide taking care of his mother. (Tr. 17.)

Treatment notes prior to the alleged onset date show that Plaintiff sought treatment for chronic neck pain in December 2014, related to an injury where he was kicked in the neck. (Tr. 392.) He also reported difficulty with numbness and tingling in his hands and feet. (*Id*.) It was noted that Plaintiff was obese; he was 6 feet tall and 323 pounds, resulting in a body mass index of 43.81. (Tr. 393.) On examination, he had diminished sensation to touch in his hands and feet. (Tr. 394.)

On December 30, 2014, Plaintiff sought follow-up treatment at Texas Tech Physicians Family Medicine. (Tr. 392-95.) He reported the injury to his neck had occurred five to six years ago. (Tr. 392.) Plaintiff continued follow-up treatment at Texas Tech through November 7, 2016. (Tr. 380-82.) The record notes that Plaintiff requested hydrocodone for pain. (Tr. 380.) The attending physician was unable to perform a complete physical examination due to Plaintiff's complaints of pain and spasms. (Tr. 381.) Mental status examination findings were unremarkable. (*See id*.) The attending physician indicated that narcotic medication could not be prescribed without records or an MRI, and instead prescribed meloxicam, cyclobenzaprine, and ondansetron for pain. (Tr. 382.) Plaintiff did not return for treatment at Texas Tech after November 2016. (*See* Tr. 380-98.)

Plaintiff sought care at the emergency department in September 2019, complaining of dyspnea and chest tightness that had worsened since onset three days prior. (Tr. 481.) Plaintiff reported smoking ten cigarettes per day. (Tr. 483.) He also reported "multiple stressors" that were "coincident with his symptoms." (Tr. 485.) Plaintiff had an "elevated blood sugar in the 350s." (*Id*.) Despite a family

10

history of diabetes and other risk factors, Plaintiff reported he had not been evaluated for diabetes. (*Id.*) Plaintiff was treated with IV fluids; assessed with acute hyperglycemia and acute adjustment disorder with anxiety; and discharged home with instructions to follow up with outpatient treatment for diabetic teaching and management. (Tr. 485-86.)

Thereafter, the record does not reflect any routine care until Plaintiff reestablished primary care with Regence Health Network ("RHN"). (Tr. 479-511, 537-601, 602-24, 625-52.) Examinations between 2020 and 2022 generally showed that Plaintiff was in mild distress, walked with irregular gait, and used a cane for ambulation; however, these same examinations routinely confirmed normal motor strength, normal movement in all extremities, normal respiration, intact reflexes, and no lesions, rashes, edema, or ulcerations. (*See, e.g.*, Tr. 492, 496, 499, 503, 507, 569, 576, 578, 586, 610, 616, 622, 633, 639.) During this same period, only three examinations at RHN indicated limited ambulation or range motion. (*See* Tr. 550 (August 2020); Tr. 639 (November 2021); Tr. 633 (February 2022).)

In June 2020, Plaintiff attended two counseling visits with Desire Winslow, LMSW ("Ms. Winslow"), at RHN. (Tr. 560-64.) Ms. Winslow documented a PHQ-9 (Patient Health Questonnaire-9) score of 20 out of 27 and a GAD-7 (Generalized Anxiety Disorder-7) score of 10 out of 21. (Tr. 559.) On mental status examinations, Plaintiff was observed with appropriate grooming and hygiene, cooperative and calm behavior, normal speech, intact alertness, intact memory, sad and tearful mood, intact judgment and insight, intact thought processes, normal

11

thought content, and normal motor activity. (Tr. 563.) Ms. Winslow encouraged

Plaintiff to establish routine counseling to help manage his depression, but the record

does not indicate that Plaintiff pursued such treatment. (Tr. 560, 564.)

## II.    Relevant Opinion Evidence

On October 23, 2020, Plaintiff attended a consultative examination with

Aman Patel, D.O. ("Dr. Patel"). (Tr. 513-18.) Plaintiff reported a history of

widespread pain and diabetes. (Tr. 513.) He also reported "a history of fibromyalgia

for the last two or three years." (*Id.*) Plaintiff described his fibromyalgia as "chronic

pain in the multiple joints as well as multiple parts of the body," with "bilateral

shoulder muscle spasms," and "mild stiffness," but no pain. (*Id.*) Dr. Patel noted

that he reviewed Plaintiff's past medical records, including a May 2018 x-ray of the

back "suggestive of mild degenerative changes of the lower lumbar spine," and an

October 2019 chest x-ray that was negative. (Tr. 514.) Dr. Patel also noted that the

October 2019 records indicated other medical issues at that time, including

somatization disorder, acute hyperglycemia, and acute adjustment disorder with

anxiety. (*Id.*)

On physical examination, Dr. Patel noted that Plaintiff was obese, his gait was

"limping and slow," and he walked with the assistance of a cane. (Tr. 515, 516.) Dr.

Patel also noted tenderness of the back, left ankle, foot, left knee, and shoulder;

Plaintiff was unable to squat and rise or get up and down from the exam table due to

pain and instability; he was unable to walk on his heels and toes; his walking was

"abnormal;" and he could not stand or hop on one foot. (Tr. 517.) Dr. Patel

12

diagnosed peripheral neuropathy due to diabetes, degenerative disc disease of the lumbar spine, chronic fibromyalgia, type 2 diabetes, arthritis, muscle spasm, gait instability, and obesity.  (Tr. 518.)  Dr. Patel opined that Plaintiff had limitations in standing, walking, lifting, carrying, bending, stooping, crouching, squatting, reaching, handling, fingering, feeling, and avoiding certain environments; he needed an assistive device to ambulate for short and long distances and on uneven terrain; and Plaintiff had no limitations in sitting.  (*Id.*)

On November 6, 2020, Plaintiff attended a consultative psychological evaluation with Randall Rattan, Ph.D. ("Dr. Rattan").  (Tr. 530-34.)  Plaintiff's self-reported psychiatric history included diagnoses of PTSD and anxiety "a long time back."  (Tr. 531.)  He reported his diagnosis of PTSD was related to his time working as a prison guard during prison riots, most recently in 2012.  (*Id.*)  He also reported "some generalization of trauma[-]related anxiety [including] some 'phobias' such as experiencing anxiety while being a passenger in a car.  (*Id.*)  Dr. Rattan noted "anxious" mood and "restricted" emotional expression; "grossly intact" remote and recent memory; average or above average abstraction ability; below average attention and concentration; and no deficits in judgment and insight.  (Tr. 533.)  Dr. Rattan diagnosed "posttraumatic stress disorder, mild" and opined that Plaintiff was capable of carrying out basic instructions and exhibiting appropriate behavior but may have "some intermittent" difficulty sustaining employment.  (Tr. 534.)

On June 13, 2021, State agency psychological consultant Russell Phillips, Ph.D. ("Dr. Phillips"), reviewed the record and opined that Plaintiff could "tolerate

the minimum social demands of simple-task settings" and "tolerate simple changes in routine, avoid hazards, travel independently, and make/carry out simple plans." (Tr. 135, 160.)

## III.    The ALJ's Disability Decision was Supported by Substantial Evidence.

### A. The ALJ correctly found at step two that Plaintiff's fibromyalgia was not a medically determinable impairment.

At step two, an ALJ first must decide whether an alleged impairment is an impairment at all.  If not, there is no error in failing thereafter to mention or analyze the alleged impairment further.  *See Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004).  Next, the ALJ "must consider the medical severity of [the claimant's] impairments."  20 C.F.R. § 404.1520(a)(4)(ii), (c).  To comply with this regulation, the ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'"  *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010).  A prerequisite to this consideration is deciding whether claimants have a "medically determinable physical or mental impairment," because claimants are deemed not disabled if they cannot prove that an impairment is medically determinable.  *Id.* § 404.1520(c).  If an ALJ determines that the claimant has one or more severe medically determinable impairments, he or she then moves on to subsequent steps in the evaluation process, as noted above.  *See id.* § 404.1520(a)(4).

A severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  An impairment is not severe "only if it is a

slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101, 1104-05 (5th Cir. 1985); *see also Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). An impairment is severe if it is anything more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work. *Stone*, 752 at 1101. "This second step requires the claimant to make a *de minimis* showing." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992)). The Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) [ (2012)] is used." *Stone*, 752 F.2d at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Despite this presumption, "courts must look beyond the use of 'magic words' and determine whether the ALJ applied the correct severity standard." *Holmes v. Astrue*, No. 3:11-CV-2634-G-BH, 2013 WL 638830, at *9 (N.D. Tex. Jan. 25, 2013), *rec. adopted*, 2013 WL 646510, at *1 (N.D. Tex. Feb. 20, 2013). Unless the correct standard is used, the claim must be remanded for reconsideration. *Stone*, 752 F.2d at 1106.

Here, the ALJ listed Plaintiff's fibromyalgia as a severe impairment in her step-two finding ("Finding #3"), but then explained in her narrative that fibromyalgia was a non-medically determinable impairment because it was not

15

supported by "appropriate medical evidence." (Tr. 13 (citing SSR 12-2p).) Plaintiff

posits that this was due to a "scrivener's error" because "[t]he ALJ did not discuss or

mention fibromyalgia in the remainder of the decision." (*See* Pltf. Br. at 13.) While

the ALJ may have committed a "scrivener's error" in Finding #3, Plaintiff is

incorrect in asserting that the ALJ did not mention fibromyalgia in the remainder of

the decision. (*See id*.) The ALJ stated:

> Specifically, the record fails to establish a diagnosis by a licensed physician (i.e., an acceptable medical source) who (1) reviewed the claimant's medical history and (2) physically examined the claimant with supporting signs. In addition, no physical examinations within the relevant adjudicatory period revealed the requisite tender points and other supportive clinical findings, as enumerated in SSR 12-2p. Further, the record does not reflect testing that excludes "other disorders," which is required to establish fibromyalgia (SSR 12-2p).

(Tr. 13.) Thus, contrary to Plaintiff's assertion, the ALJ's narrative under Finding

#3 fully explained her rationale for finding that fibromyalgia was not a medically

determinable impairment.

Furthermore, the ALJ's explanation established that she complied with the

regulation establishing how an ALJ determines whether a claimant has a medically

determinable impairment of fibromyalgia. *See* Soc. Sec. Ruling, SSR 12-2p; Titles II

& XVI: Evaluation of Fibromyalgia, SSR 12-2P (S.S.A. July 25, 2012) ("SSR 12-

2p"). Fibromyalgia is "a complex medical condition characterized primarily by

widespread pain in the joints, muscles, tendons, or nearby soft tissues that has

persisted for at least 3 months." SSR 12-20. "[T]he symptoms and signs of

fibromyalgia may vary in severity over time and may even be absent on some days,"

and "symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"  SSR 12-2p.

To establish a medically determinable impairment of fibromyalgia, the record must contain a physician's diagnosis of fibromyalgia and evidence to satisfy one of two tests, one based upon the 1990 American Colleges of Rheumatology Criteria for the Classification of Fibromyalgia and the other based upon the 2010 American College of Rheumatology Preliminary Diagnostic Criteria.  *Id.*  The 1990 test requires (1) a history of widespread pain; (2) at least eleven positive tender points on physical examination; and (3) evidence that other disorders that could cause the symptoms or signs were excluded.  The 2010 test is the same as the 1990 test, except for the second element. Instead of eleven positive tender points, the claimant must show repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, such as fatigue, cognitive problems, depression, anxiety, or irritable bowel syndrome.  *Id.*

Plaintiff first contends that the ALJ erred in finding that fibromyalgia was not diagnosed by an acceptable source because it was diagnosed by consultative examiner Dr. Patel in October 2020.  (*See* Pltf. Br. at 13-14 (citing Tr. 518).)  SSR 12-2p clarifies that a "physician's diagnosis alone" is insufficient, and "[t]he evidence must document that the physician reviewed the person's medical history and conducted a physical exam."  During his consultative examination with Dr. Patel, Plaintiff reported that he had a history of fibromyalgia for the "last two or three years."  (Tr. 513.)  Plaintiff described the history of his condition to Dr. Patel as

17

"chronic pain in the multiple joints as well as multiple parts of the body," with "bilateral shoulder muscle spasms," and "mild stiffness" but no pain. (Tr. 513.) During the examination, however, Plaintiff denied having any pain; his range of motion was normal; and he had no weakness or numbness in his hands. *Id.* Dr. Patel noted that he reviewed Plaintiff's medical records from May 2018 and October 2019, but his report did not mention any findings in those records consistent with fibromyalgia. (Tr. 514.)

Dr. Patel further noted that Plaintiff had no abnormalities in the extremities; no neurological deficits; and 5/5 muscle strength. (Tr. 517.) Plaintiff had tenderness in the back, left ankle, foot, and shoulder, but no joint swelling or effusion, erythema, or deformity; he was able to lift, carry, and handle light objects and demonstrated no manipulative difficulties; and he demonstrated some difficulty squatting and rising, heel/toe walking, and tandem walking, but this was attributed to back, ankle, and knee pain, rather than fibromyalgia. (*Id.*) Although Dr. Patel diagnosed Plaintiff with fibromyalgia, his diagnosis appeared to be based solely on Plaintiff's reported history of the condition, rather than objective medical findings. As previously noted, a diagnosis must be established by medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. §§ 404.1508, 404.1525(c), 416.908, 416.925(c); *see also Jones v. Heckler*, 702 F.2d 616, 621 n.4 (5th Cir. 1983) (noting that "[t]his Court has never taken the position that subjective evidence must take precedence over conflicting objective medical evidence"); *Prince v. Barnhart*, 418 F. Supp. 2d 863,

867 (E.D. Tex. 2005) (subjective complaints must be corroborated, at least in part, by objective evidence).

Here, Dr. Patel's examination did not reveal that Plaintiff had pain in all quadrants of the body; he did not find at least eleven tender points; and he did not rule out other disorders that could account for Plaintiff's symptoms. *See* SSR 12-2p. Although Plaintiff asserts other symptoms associated with fibromyalgia, (*see* Pltf. Br. at 14), the objective medical findings do not show "repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, such as fatigue, cognitive problems, depression, anxiety, or irritable bowel syndrome," as required by SSR 12-2p.

Plaintiff cites treatment records allegedly showing "numerous instances" of fibromyalgia symptoms, including "widespread pain, weakness, numbness, anxiety, and depression, but these records primarily document Plaintiff's subjective complaints. (*See* Pltf. Br. at 14.) For example, in November 2016, Plaintiff reported having chronic pain and spasms, which started after a car accident; an examination revealed he was anxious, but his orientation, memory, and attention were normal. (Tr. 380-81.) In April 2017, Plaintiff went to the emergency room with complaints of back pain and a headache after he fell and hit his head. (Tr. 465.) In February and June 2020, Plaintiff complained of pain and spasms, but a physical examination revealed normal motor strength and normal movement in all extremities. (Tr. 491-92, 495-96.) The remaining treatment records cited by Plaintiff show that he complained of muscle weakness and numbness and anxiety, but he denied having

19

fatigue.  (Tr. 616, 622, 633.)  Based on the foregoing, Plaintiff's physical examinations do not reveal any objective clinical findings to support Plaintiff's subjective claims.

The medical record also does not establish evidence of chronic widespread pain in all quadrants of the body, lasting at least three months; at least eleven positive tender points upon examination; repeated manifestations of six or more fibromyalgia symptoms; or evidence of examinations and tests that rule out other disorders that could account for the person's symptoms and signs.  *See* SSR 12-2p.  The record also does not show that Plaintiff was ever treated for fibromyalgia.  *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (the lack of treatment was an indication of non-disability).  Therefore, neither the 1990, nor the 2010 criteria were met, and the ALJ reasonably determined that fibromyalgia was not a medically determinable impairment.  *See* SSR 12-2p.

It is Plaintiff's burden to establish disability and to provide or identify medical and other evidence of his impairment.  *See* 20 C.F.R. § 404.1512(c), 416.912(c); *see also Wren*, 925 F.2d at 128 (Plaintiff's burden to establish disabling impairment); *Domingue*, 388 F.3d at 463 (burden of establishing the presence of a medically determinable impairment with acceptable medical evidence is on the claimant). Here, Plaintiff did not meet his burden of presenting evidence that could establish the presence of fibromyalgia as a medically determinable impairment under either test listed in SSR 12-2p.  Furthermore, because the ALJ properly found that fibromyalgia was not a medically determinable impairment, the ALJ was not required to mention

or analyze the alleged impairment further.  *See Domingue*, 388 F.3d at 463.

Accordingly, the Court finds no error.

### B.  There Was No Error in the ALJ's Evaluation of the Opinion Evidence.

Plaintiff next argues that the ALJ's evaluation of the medical opinion evidence

was not supported by substantial evidence.  (*See* Pltf. Br. at 16-20.)  Plaintiff first

contends that the ALJ's analysis of the opinion of the State agency psychological

consultant "Dr. Ligon"[3] was not supported by substantial evidence because, despite

finding the opinion "persuasive," the ALJ assessed less restrictive mental limitations

in the RFC.  (*See* Pltf. Br. at 16.)  Plaintiff next contends that the ALJ considered

consultative examiner Dr. Patel's opinion under "an improper legal standard" when

she reduced the opinion's persuasiveness because it was "not quantified in

vocationally relevant terms."  (*See id.* at 18-19.)  Contrary to Plaintiff's contentions,

the ALJ clearly and accurately summarized the relevant legal standards for

evaluating medical opinion evidence and properly applied those standards to all the

medical opinions of record.

"An 'ALJ is responsible for determining an applicant's residual functional

capacity.'"  *Webster v. Kijazaki*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Ripley v.

Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).  In doing so, the ALJ "examines the

---

[3] Plaintiff asserts that the ALJ did not properly consider the opinion of "State agency psychological consultant Dr. Ligon" (*see* Pltf. Br. at 17), but Plaintiff appears to have inaccurately cited the April 19, 2021 physical RFC assessment of State medical agency consultant Laurence Ligon, M.D. ("Dr. Ligon"), (Tr. 153-57), instead of the June 13, 2021 mental RFC assessment of State agency psychological consultant Dr. Phillips, whose mental findings the ALJ cited in her analysis, (Tr. 157-160).

medical evidence in the record, including the testimony of physicians and the claimant's medical records."  *Id*.  Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017).  Here, Plaintiff filed his claims on February 20, 2019, and therefore, the 2017 regulations are applicable to his claims.

Under these revised regulations, the ALJ must determine the persuasiveness of a physician's medical opinion.  20 C.F.R. § 416.920c.  To determine the persuasiveness of each medical opinion, the ALJ considers supportability, consistency, relationship with the plaintiff, specialization, and other factors that tend to support or contradict a medical opinion.  *Id*. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  The most important factors are supportability and consistency.  *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2).  When considering medical opinions, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Stephens v. Saul*, 3:20-CV-823-BH, 2020 WL 7122860, at *5 (N.D. Tex. Dec. 4, 2020) (citation omitted); *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citation omitted).

The ALJ must also explain the persuasiveness of medical opinions.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  An ALJ will discuss how she considered the

supportability and consistency factors for a medical source's medical opinions in her

determination or decision. *Id.* "At a minimum, the ALJ's discussion [of these

factors] must give enough reasons to permit meaningful judicial review." *Hubbard v.*

*Comm'r of Soc. Sec.*, No. 4:20-CV-588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21,

2022) (citations omitted). The ALJ may, but is not required to, explain how she

considered the remaining factors. *Id.* When a medical source provides multiple

medical opinions, the ALJ will articulate how she "considered the medical

opinions . . . from that medical source together in a single analysis using the factors,"

but she is not required to articulate how she considered each medical opinion from

one medical source individually. *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1).

"[F]undamentally, the ALJ cannot reject a medical opinion without an

explanation." *Kneeland v. Berryhill*, 850 F.3d 749, 759-60 (5th Cir. 2017) (citation and

internal quotations omitted); *accord Winston*, 755 F. App'x at 398. In explaining a

rejection of a physician's opinion, the ALJ does not have "to state the weight given

to each symptom and diagnosis in the administrative record." *Michelle K. M. v.*

*Berryhill*, No. 3:17-CV-3044-BH, 2019 WL 1243355, at *13 (N.D. Tex. Mar. 18,

2019). An "ALJ's failure to mention a particular piece of evidence does not

necessarily mean that [the ALJ] failed to consider it" when "the ALJ's decision

states explicitly that [the ALJ] considered the entire record in [the ALJ's] decision."

*Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). There is no "statutorily

or judicially imposed obligation for the ALJ to list explicitly all the evidence [she]

23

takes into account in making [her] findings." *See Hammond*, 124 F. App'x at 851.
*Wendy M. B. v. Kijakazi*, No. 3:20-CV-02957-BT, 2022 WL 2704038, at *3–4 (N.D.
Tex. July 11, 2022).

Upon review of the entire record and the ALJ's decision, the undersigned
finds that the ALJ properly considered the State agency psychological consultants'
opinions, and her persuasiveness analysis was supported by substantial evidence.
(Tr. 19.)  Plaintiff suggests that because the ALJ found the State agency
psychological consultants' opinions persuasive, she should have included more
restrictive limitations in the RFC finding.  (*See* Pltf. Br. at 17.)  Despite Plaintiff's
suggestion, however, the ALJ is not required to adopt a specific physician's
assessment.  *See Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir.
Jan. 18, 2023) (unpublished); *see also Webster*, 19 F.4th at 719 (affirming an ALJ's
RFC that neither "adopted the state agency report verbatim nor accepted the
testimony of [a treating physician]," but was nevertheless "based on substantial
evidence").  Furthermore, as previously explained, it "is the responsibility of the ALJ
to interpret 'the medical evidence to determine [a claimant's] capacity for work.'"
*Miller*, 2023 WL 234773, at *4 (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th
Cir. 2016) (citation omitted)).

Here, the ALJ considered all the State agency medical and psychological
consultants' opinions and found them only "somewhat persuasive."  (Tr. 19.)
Although the ALJ collectively made her findings about the State agency consultants'
opinions in a combined analysis and did not refer to any provider by name, her

analysis sufficiently differentiates the mental RFC findings from the physical RFC findings. (*See* Tr. 19.) The ALJ specifically noted the psychological consultants' assessment that Plaintiff could perform simple tasks while tolerating simple changes in routine and minimal social demands. (*Id.*) The ALJ also explained that these physicians are familiar with the disability evaluation process and its requirements; they provided a function-by-function assessment in vocationally relevant terms; and their opinions were supported by substantial medical evidence, including Plaintiff's limited mental health treatment and normal mental status examination findings, such as intact concentration/memory. (*Id.*) After reviewing the medical evidence as a whole, however, the ALJ determined that the opinions were "somewhat inconsistent" with the objective findings in the record, including evidence generated after these physicians completed their review. (*Id.*) Therefore, the ALJ reasonably found that the record warranted "slightly greater" limitations than were assessed by the State agency ad psychological consultants. (*Id.*) As previously explained, the ALJ is not required to adopt a specific physician's assessment, as the ALJ has the responsibility to determine a claimant's RFC. *See Miller*, 2023 WL 234773, at *4; *Webster*, 19 F.4th at 719.

Here, the ALJ discussed Plaintiff's mental impairments and summarized the evidence that supports the mental limitations included in the RFC finding. For example, at step three the ALJ found that Plaintiff had moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or

maintaining pace; and moderate limitation in adapting or managing oneself.  (Tr.

15.)  The ALJ also noted that Plaintiff's mental symptoms improved while being

conservatively managed with prescribed medications.  (*Id.*)  *See James v. Bowen*, 793

F.2d 702, 706 (5th Cir. 1986) (impairments that can be reasonably controlled with

medications are not disabling); *see also Undeim v. Barnhart*, 214 F. App'x 448, 451 (5th

Cir. 2007) (pointing out that the claimant's condition had improved with medical

treatment).

The ALJ further noted that while Plaintiff reported having anxious and

depressed moods, his mental status examinations generally showed normal mood

and affect, as well as intact attention, concentration, and memory.  (Tr. 15, 385, 483,

596, 645.)  For example, counseling notes from Ms. Winslow in June 2020, indicate

that Plaintiff had appropriate grooming and hygiene, cooperative and calm behavior,

normal speech, intact alertness, intact memory, sad and tearful mood, intact

judgment and insight, intact thought processes, normal thought content, and normal

motor activity.  (Tr. 15, 563.)  In November 2020, consultative psychological

examiner Dr. Rattan noted intact memory and alertness, anxious mood, no

perceptual abnormalities, and largely intact concentration.  (Tr. 533.)  As the ALJ

noted, Ms. Winslow encouraged Plaintiff to establish routine counseling to help

manage his depression, but the record does not indicate that he pursued any further

mental health treatment, (Tr. 564), and Dr. Rattan noted that Plaintiff reported no

history of inpatient psychiatric treatment, (Tr. 531).  (Tr. 15, 18.)  *See* 20 C.F.R.

§§ 404.1529(c)(3), 416.929(c)(3); *see also Villa*, 895 F.2d at 1024 (lack of treatment

undermines claims of a disabling impairment).

The undersigned finds that, after the considering the entire record, the ALJ reasonably determined that Plaintiff was more limited than the State agency psychological consultants opined and, accordingly, included additional limitations in the RFC finding.  (Tr. 19.)  Furthermore, the ALJ's RFC finding that Plaintiff was limited to understanding, remembering, and carrying out simple and detailed instructions; focusing and concentrating on such tasks for two-hour periods and persisting for eight hours per day, 40 hours per week with normal breaks; interacting occasionally with supervisors, coworkers, and the public; and adapting to normal changes in work situations was supported by substantial evidence.  *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.").

Plaintiff further suggests that the ALJ's step-five finding was not supported by substantial evidence because she did not include all of Plaintiff's mental limitations in the hypothetical question presented to the vocational expert at the administrative hearing.  (*See* Pltf. Br. at 18.)  Plaintiff's argument is unavailing.  The Fifth Circuit has long recognized that hypothetical questions to a vocational expert shall include functional limitations that the evidence supports and the ALJ accepts. *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002).

Here, because the ALJ's hypothetical included all of Plaintiff's established limitations, (Tr. 58-59), the vocational expert's response provides substantial

27

evidence supporting her finding that Plaintiff was not disabled. *Masterson*, 309 F.3d 267, 273; *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). Plaintiff fails to provide any evidence showing greater limitations than those assessed by the ALJ in the RFC finding, as was his burden. *Greenspan*, 38 F.3d at 236 (claimant's burden to prove functional limitations that must be incorporated in the RFC assessment). Accordingly, the Court finds no error in the ALJ's step-five finding.

Finally, Plaintiff contends that the ALJ implied an "improper legal standard" when she considered the opinion of consultative examiner Dr. Patel. (*See* Pltf. Br. at 18-19.) Dr. Patel found that Plaintiff had limitations, but he did not provide any specific work-related functional limitations resulting from Plaintiff's impairments. (Tr. 518.) The ALJ explained that Dr. Patel's failure to quantify Plaintiff's limitations in "vocationally-relevant terms" reduced the opinion's persuasiveness, and therefore, found the opinion only "somewhat persuasive." (Tr. 20.) Upon review, the undersigned finds the ALJ's persuasiveness finding was well supported.

The regulations governing claims filed on or after March 27, 2017, revise the definition of "medical opinion," providing that statements by a medical source reflecting judgments about a claimant's diagnosis and prognosis are not considered medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations. 20 C.F.R. § 404.1513(a)(2), (3) (2017). A medical assessment that diagnoses and observes a patient but does not opine on what the patient can do is not a "medical opinion." *See Winston v. Berryhill*, 755 Fed. App'x 395, 402-03 (5th Cir. 2018) (concluding that "a 'medical opinion' requires

both an evaluation of symptoms and an expression of judgment regarding a claimant's capabilities and restrictions"); *see also Greenspan*, 38 F.3d at 236 (An ALJ may disregard a medical assessment when it is brief and conclusory).  Therefore Dr. Patel's opinion did not qualify as a medical opinion, and the ALJ was not required to provide a more detailed analysis of the opinion.

Plaintiff also contends that the ALJ should have recontacted Dr. Patel if she believed his opinion was "overly vague."  (*See* Pltf. Br. at 19-20.)  Contrary to Plaintiff's contention, the ALJ did not determine the opinion was "overly vague." Rather, the ALJ specifically explained that Dr. Patel did not assess any specific work-related functional limitations in his assessment, which "reduce[d] [the opinion's] persuasiveness."  (Tr. 20.)  Thus, Plaintiff's argument lacks merit. Furthermore, the decision to recontact a medical source or request additional evidence is discretionary.  The ALJ may request additional evidence or recontact the medical source if the evidence is inconsistent, or if the ALJ has insufficient evidence to determine whether the claimant is disabled.  *See* C.F.R. § 404.1520b(b).

In this case, the evidence was more than sufficient to allow the ALJ to make an informed disability determination, and therefore, the ALJ was not required to recontact Dr. Patel.  *See id.*; *see also St. Clair v. Berryhill*, No. 4:16-CV-1100-A, 2017 WL 3332260, at *6 (N.D. Tex. July 19, 2017), *report and recommendation adopted sub nom. Clair v. Berryhill*, No. 4:16-CV-1100-A, 2017 WL 3316254 (N.D. Tex. Aug. 3, 2017).

Based on the foregoing, substantial evidence in the record supports the ALJ's RFC finding. Ultimately, Plaintiff's arguments amount to an invitation for the court to reweigh the evidence, which is not proper under the substantial evidence standard of review. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (providing that a reviewing court may not reweigh the evidence or substitute its judgment for the ALJ's judgment even if the evidence weighs against the ALJ's determination); *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**, the Commissioner's decision is **AFFIRMED**, and this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED** on October 28, 2024.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE